[Civ. No. 1811. Third Appellate District.—June 24, 1918.]

## IMORY SMITH POLK, Appellant, v. LAUREL HILL CEMETERY ASSOCIATION (a Corporation), Respondent.

NEGLIGENCE—DROWNING OF CHILD IN CEMETERY RESERVOIR—PLEADING—RIGHTS OF LOT OWNERS AND PUBLIC—SURPLUSAGE.—In an action to recover damages for the death of child by drowning in a reservoir maintained by defendant in its cemetery, where children were permitted freely and without hindrance to go and come, allegations as to the rights of lot owners and visitors, and as to the right of the public to use a certain roadway for the purpose of passing through the cemetery, were surplusage.

ID.—EXCAVATION ADJOINING HIGHWAY—INSUFFICIENT ALLEGATION.—In such an action, an allegation in the complaint that in a prominent place in the cemetery and "immediately alongside" one of the driveways therein, and only a short distance from a certain entrance to the cemetery, the defendant dug, excavated, and constructed and still maintains in a prominent place a large reservoir for the holding of water, does not bring the case within the class where an excavation has been dug or maintained "adjoining a highway" into which a traveler on the highway, where he had the right to be, had accidentally fallen.

ID.—RULE OF TURNTABLE CASES.—Where dangerous and attractive machinery is maintained unguarded and exposed to the observation and temptation of little children, the natural allurements of which will tempt them to go about or upon, and against the danger of which action their immature judgment interposes no warning or defense, the conduct of the party in so maintaining such machinery involves an act of negligence for which he is liable in damages where a child of the above description, having gone upon or played about and with the machinery, is thereby injured, notwithstanding that the child so injured is a trespasser upon the land upon which the machinery is maintained.

ID.—QUALIFICATION OF RULE.—The rule is to be understood with the qualification that the dangers of the machinery, although novel and

attractive to the immature mind of a child, can be fully or sufficiently guarded to protect against injury without destroying its usefulness for the purpose for which it is maintained.

ID.—GENERAL INVITATION TO VISIT CEMETERY—RIGHT OF CHILDREN TO USE AS PLAYGROUND NOT INCLUDED.—A permissive general invitation to visit a cemetery, not abandoned, but parked and having driveways, does not include the granting of a privilege to children to make a playground of the place.

ID.—KNOWLEDGE OF USE OF CEMETERY AS PLAYGROUND—LICENSEES.—Mere knowledge by a cemetery association that children habitually went into the cemetery and therein indulged in their childish sports would make the children at most mere licensees, to whom the association owed no duty or obligation.

ID.—NONLIABILITY UNDER RULE OF TURNTABLE CASES.—A cemetery association maintaining an unguarded reservoir alongside a driveway near an entrance to the cemetery is not liable, under the rule of the turntable cases, for the drowning of a child of the age of eight years.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Geo. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

John L. McNab, for Appellant.

Haven & Athearn, for Respondent.

HART, J.—Plaintiff brought the action to recover damages for the death of his son by drowning in a reservoir maintained by defendant in its cemetery in the city of San Francisco. A demurrer to the complaint was sustained, plaintiff elected not to amend, and judgment was entered in favor of defendant for costs, from which judgment plaintiff appeals.

The complaint alleges that defendant is a corporation; that, at the time of his death, William Henry Polk was a minor of the age of eight years and was the son of plaintiff; that defendant, for many years, has maintained in San Francisco a public cemetery; the streets surrounding it are named and it is stated that they are public thoroughfares used by the general public and by minor children attending public schools; that, for many years, said cemetery has been abandoned as a burial place owing to an ordinance of the city

37 Cal. App.—40

forbidding burials therein, but that it "has been and is now maintained as a place of adornment and attraction, parked and graded and kept open to the public daily from the hour of 7 A. M. until 5 P. M. of each day. Said cemetery is located in the heart of the residence section of the city and county of San Francisco, is surrounded by dwellings, and is maintained as an open parked ground made attractive not only for the benefit of persons whose relations and friends are buried within said cemetery, but is maintained as a public place of adornment and beauty with driveways, flower gardens," etc., "maintained open for the public view." The gates, entrances, and driveways are then described, and it is alleged that the cemetery is "daily frequented by great numbers of the general public, by visitors, . . . and particularly by great numbers of minor children who were and are permitted freely and without hindrance to enter said grounds and make a playground thereof, . . . to traverse its paths and byways, play in its driveways, and go and come freely throughout the whole of said cemetery." It is then-stated that rules for the government of the public are posted in a prominent place at the entrance, to the effect that visitors should conduct themselves with proper decorum, forbid the plucking of flowers, etc.; that the owners of lots in said cemetery have the right freely to enter and do work in the way of erecting curbs, improving and adorning graves, etc.; that the cemetery contains many hundreds of individual lots, owned by the purchasers thereof, and that all the ground has been sold to individual lot owners; that for many years the general public used a roadway through said cemetery, including children going from what is known as the Richmond District to car lines at Presidio Avenue; that there is a turnstile in said roadway in the boundary fence and over said turnstile are signs reading: "Open from 7 A. M. to 5 P. M." It is next alleged: "At a prominent place in said cemetery and immediately alongside one of the driveways therein and only a short distance from the Presidio Avenue entrance aforesaid defendant dug, excavated, and constructed a large reservoir for the holding of water; said reservoir is still maintained on said premises and is of the length of about 130 feet, by a width of fifty-five feet, and was of a depth of sixteen feet; said reservoir is constructed of concrete and rises only twelve inches above the surface of the

ground, which is parked and sloped up to the edge of said concrete''; that said reservoir was wholly exposed without covering and without any fence or inclosure; that it was dangerous to all persons passing near the same ''because the turf and ground sloped up to the edge thereof, so that any person walking or standing near the edge of said reservoir was without protection and without notice of proximity to a place of danger and was without any warning sign or indication that said place was dangerous. . . . Said reservoir was also likewise a place naturally attractive to children, and the children entering said grounds were naturally attracted on account of the water therein, and were accustomed naturally to play about said reservoir, casting stones into it, and imitating fishermen by casting lines therein and playing on the turf near the edge thereof. Said reservoir was at times filled with water almost to the brim and at other times was almost empty. . . . On the twenty-fifth day of April, 1914, William Henry Polk, the son of the plaintiff, a child of eight years of age, in company with other small minor children, entered said grounds at the driveway entrance on Presidio Avenue above referred to about 2 P. M. of said day and engaged in playing in said grounds with other children, and in the same way that great numbers of children had been accustomed for years to enter and play in said cemetery with the knowledge of defendant. While engaged in such play near said reservoir said infant stumbled and was precipitated into said reservoir and drowned, and was dead when removed from said reservoir a few minutes later. Plaintiff alleges that said child came to his death through the negligence of the defendant in constructing and maintaining such reservoir without any protecting barrier,'' etc., and ''without any warning sign or guard to protect against the danger thereof. . . . Defendant at all the times herein mentioned well knew that said reservoir was attractive to children and was dangerous, and was well aware of the fact that any child or other person approaching or being near said reservoir was without protection or notice of danger and was in imminent danger of falling into said reservoir,'' and it is alleged, on information and belief, that prior to April 25, 1914, defendant, its agents and employees, had been personally notified that said reservoir was a dangerous place and a place attractive to children..

Counsel for the defendant, in their brief, analyze and construe the averments of the complaint as follows:

"The facts (alleged in the complaint) may be classified as follows:

"1. Facts relating to lot owners and visitors to graves located in defendants' cemetery.

"2. Facts relating to the right of the public to use a certain roadway for the purpose of passing through said cemetery.

"3. Facts relating to children playing in said cemetery.

"Under the first class of facts fall the allegations of paragraph IV that the cemetery was kept open from the hours of 7 A. M. until 5 P. M., and was maintained not only for the benefit of persons whose relatives and friends were buried within said cemetery, but also as a place of public adornment and beauty.

"To this class of facts likewise belong the allegations concerning the rules of the cemetery which were clearly posted to govern only the conduct of those who were invited to enter the cemetery, and the allegations concerning the rights of lot owners.

"Under the second class of facts fall the allegations concerning the use by the public of a certain roadway for the purpose of passing through said cemetery between Presidio avenue and the Richmond District."

We are satisfied with the foregoing analysis of the complaint, and agree with the conclusion declared by counsel for the respondent that the facts coming within the first and second classes, as above indicated, are surplusage. We, therefore, accept and adopt into this opinion the above analysis of the complaint. We do this, not because we believe that the facts embraced within the first and second classes, as above classified, even if properly in the complaint, would add any force or strength to the case as made by the allegations as to the cause of the accidental death of plaintiff's son, but because it will clarify the situation and confine the discussion herein to the single real question submitted by this appeal, viz.: Whether the defendant owed any duty to the deceased with respect to safeguarding, if it could be done, the reservoir into which he fell.

It may, however, be well first to note that, while the complaint alleges that "in a prominent place in said cemetery

and immediately *alongside* one of the driveways therein and only a short distance from the Presidio Avenue entrance aforesaid defendant dug, excavated, and constructed" and still maintains "in a prominent place a large reservoir for the holding of water," it is not alleged that said reservoir abutted upon or in any manner affected Presidio Avenue or the driveway near which it is maintained. Hence, the case as made by the complaint does not fall within that class where an excavation has been dug or maintained "adjoining a highway into which a traveler on the highway, where he had the right to be, had accidentally fallen." (*Peters* v. *Bowman,* 115 Cal. 345, 349, [56 Am. St. Rep. 106, 47 Pac. 113].) Nor does it come within the class of cases which constitute exceptions to the general rule as to the liability of an owner of property to a trespasser thereon who has been injured through some trap or hidden or concealed danger maintained by the owner on his land, and as to which the latter has given no warning to the public or others.

But it is vigorously urged that the case here comes within the doctrine of what are known as the turntable cases.

The rule of the so-called "turntable cases," generally stated, is this: That, where dangerous and attractive machinery is maintained unguarded and exposed to the observation and temptation of little children, the natural allurements of which will tempt them to go about or upon, and against the danger of which action their immature judgment interposes no warning or defense, the conduct of the party in so maintaining such machinery involves an act of negligence for which he is liable in damages where a child of the above description, having gone upon or played about and with the machinery, is thereby injured, notwithstanding that the child so injured is a trespasser upon the land upon which the machinery is maintained. This rule is, of course, to be understood with the qualification that the dangers of the machinery, although novel and attractive to the immature mind of a child, can be fully or sufficiently guarded to protect against injury without destroying its usefulness for the purpose for which it is maintained. The principle from which the doctrine of the turntable cases is deduced or upon which it is supported is spoken through the maxim of the law that "one must so use and enjoy his property as to interfere with the comfort and safety of others as little as possible, con-

sistently with its proper use." (*Barrett* v. *Southern Pac. Co.,* 91 Cal. 296, 303, [25 Am. St. Rep. 186, 27 Pac. 666].) The court, in that case, said:

"If defendant ought reasonably to have anticipated that leaving this turntable unguarded and exposed an injury such as plaintiff suffered was likely to occur, then it must be held to have anticipated it, and was guilty of negligence in thus maintaining it in its exposed position. It is no answer to this to say that the child was a trespasser, and if it had not intermeddled with defendant's property, it would not have been hurt, and that the law imposes no duty upon the defendant to make its premises a safe playing-ground for children.

"In the forum of law, as well as of common sense, a child of immature years is expected to exercise only such care and self-restraint as belongs to childhood, and a reasonable man must be presumed to know this, and required to govern his actions accordingly. It is a matter of common experience that children of tender years are guided in their actions by childish instincts, and are lacking in that discretion which is ordinarily sufficient to enable those of more mature years to appreciate and avoid danger, and in proportion to this lack of judgment on their part, the care which must be observed toward them by others is increased."

We may, however, here pause to inquire whether the plaintiff's son was in the cemetery at the time of his death under the general invitation extended by the defendant to the public to visit the cemetery.

While the complaint declares that the defendant's cemetery, for a number of years prior to the accidental death of plaintiff's son, had been abandoned as a burial place for the dead and that since that time said cemetery "has been and is now maintained as a place of adornment and attraction, parked and graded and kept open to the public daily from 7 A. M. to 5 P. M.," yet it is likewise shown that there are still buried in said cemetery many dead human bodies which had been deposited in graves therein before the cemetery had been abandoned as such, and that said graves are still maintained and cared for by surviving relatives and friends of the deceased. It is, therefore, quite manifest that the said cemetery is not now, nor has it been since its abandonment as such, any the less a cemetery, notwithstanding that it has

been maintained in a manner to give it the appearance of a park. In other words, it has not been converted into a public park, in the sense in which such places of amusement and diversion are commonly known, and much less into a children's playground, merely because further burials therein have been stopped under the mandates of ordinances of the city of San Francisco prohibiting burials therein. The invitation to the public to visit the cemetery must, therefore, be assumed to be accompanied by the condition that persons accepting or acting upon it will do so with due regard to the fact that a place, such as it is, which is dedicated to the dead, as the resting place of the mortal remains of those who have passed to the beyond, is not one of recreation and pleasure, where the lighter vein of life may with propriety be given full play, but is one which, obediently to the common sentiments of mankind, demands of those who visit it dignity of demeanor and respect and that serious reflection that the one great event, which is inevitably common to all living creatures, and of which a place in which the dead have been buried is a most potent reminder, would naturally inspire. Hence, it must be said, on the complaint's description of the place where appellant's son lost his life, that the invitation extended to the public by the owner of the cemetery (the defendant) to visit the same during certain specified hours of each day is limited to those of the public that go or desire to go there for a purpose other than for those lighter pleasures which are intended and calculated to divert the mind from the more serious affairs of life, and even for the time from that final inevitable destiny which marks the end of all human life. Of course, it cannot be doubted that children are within the scope of the invitation, but it certainly cannot reasonably be said that the invitation included the granting of a privilege to children to make a playground of the place. No one would contend that under the invitation children are privileged to play on the graves; and, although it had been the custom of children residing in the neighborhood of the cemetery to go to the cemetery and play therein, there is nothing in the complaint to show that they had been either directly or impliedly given the right to do so. When, therefore, they were in the cemetery for the purpose of playing only, they were not there for any purpose to which the cemetery is put or designed to be put, nor were they there under

the general privilege accorded or general invitation extended to the public to visit the cemetery. "The invitation which creates a legal duty," says the court, in *Mandeville Mills* v. *Dale,* 2 Ga. App. 607, [58 S. E. 1060], "may be express or implied, as when such owner or occupier by acts or conduct leads another to believe the land or something thereon was intended to be used as he uses them and that such use is not only acquiesced in by the owner or occupier, *but is in accordance with the intention or design for which the way or place or thing was adopted and prepared, or allowed to be used.*" (Italics ours. See, also, Words and Phrases, second series, under word, "Invitation," and the cases therein cited.)

It is true that the complaint discloses that the defendant by its agents and officers had knowledge of the fact that children were accustomed to playing in the cemetery, and that they were permitted by the defendant, its agents, etc., to go in and upon the paths and byways of the cemetery to play therein and thereon. But mere knowledge by the defendant that children habitually went into the cemetery and therein indulged in their childish sports would make them, at the most, mere licensees, to whom the defendant owed no duty or obligation. (*Means* v. *Southern California Ry. Co.,* 144 Cal. 473, 478, 479, [1 Ann. Cas. 206, 77 Pac. 1001]; *Kennedy* v. *Chase,* 119 Cal. 642, [63 Am. St. Rep. 153, 52 Pac. 33]; *Grundel* v. *Union Iron Works,* 141 Cal. 564, [75 Pac. 184]; *Herzog* v. *Hemphill,* 7 Cal. App. 118, [93 Pac. 899]; *Schmidt* v. *Bauer,* 80 Cal. 567, [5 L. R. A. 580, 22 Pac. 256].)

Mr. Thompson, in his treatise on Negligence, section 303, says: "We have found no support for any rule which would protect those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience, in no way connected with business or their relations with the occupant."

In the Means case, *supra,* the plaintiff was injured while in the freight-shed of the defendant by the bursting of a tank of sulphuric acid situated in said shed. The plaintiff had gone into the freight-shed to see a party in connection with some matter personal to himself. His action for damages was defeated in the trial court, a motion for a nonsuit having been granted, and the judgment thereupon entered affirmed on appeal. The supreme court, referring to the

facts, said: "If the plaintiff was not technically a trespasser in entering the freight-house of the defendant, he was at best but a licensee, entering thereon subject to the rule determining the measure of responsibility of the owner of premises to a mere licensee. He was not upon the premises by the invitation, express or implied, of the defendant, nor for any business purpose connected with defendant, nor in relation to any business for which the freight-house, in which he was injured, was used. He went there of his own volition, uninvited, concerning a matter which was personal to himself, in which the defendant had no interest."

The foregoing observations have peculiarly pertinent application to the facts of this case. As we have shown, the complaint discloses that the appellant's son went to the cemetery on the day of his unfortunate death for the purpose of gratifying his childish desires and fancies, and was there in connection with a matter in no way germane to the business of the defendant or the purpose for which it maintains the cemetery, or the purpose for which it extends to the public an invitation to visit the cemetery.

It follows from the foregoing considerations that if the appellant is entitled, upon the facts stated in his complaint, to prevail herein, he must show that the said facts bring the case within the rule of the turntable cases. This he has failed to do, as we will now proceed to show.

We have previously stated the principle of law and the reasons supporting the rule applied in cases of injury sustained by trespassing children of immature judgment in playing on and about dangerous machinery to which they have been allured by the peculiar natural attractiveness thereof to childish minds. We may here further say upon that subject that, while the rule is applicable in all cases of attractive machinery in playing with which children have been injured, the leading cases have particularly to do with turntables, which, as is commonly known, are contrivances maintained by railroad companies at certain of their stations for the purpose of turning engines and cars in directions in which the exigencies or requirements of their traffic compel them to go. And those cases, in portraying the natural attractiveness of turntables to infant minds, have described them, as they naturally would appear to the mind of a child, as a sort of "merry-go-round," a contrivance, which, as is

equally well known, is maintained for the amusement of children and which always, very naturally, arouses to a high pitch their childish predilection for sport and fun. Naturally enough, then, a child would readily be tempted to attempt to play and ride on turntables, machines of lurking and unobservable danger to a child, and hence the rule that the person maintaining them must so safeguard them (as by locking them when not in use so that they cannot be turned) as will, in a large measure, protect children playing on or about them against injury. The case here, however, presents an entirely different situation. A pond of water, it may be conceded, is always attractive to youngsters, but the dangers connected with and inherent in a lake or pond of water, natural or artificial, are obvious to everybody—even to a child old enough to be permitted by its parents to go about and play unattended upon the streets or in the public parks. It would not conform to the dictates of common reason to say that a child of the age of eight years, or even much younger, does not know and fully realize that a fall into a pond of water or a deep reservoir would result in injury to him, if not in his death. But there is no necessity for abstract reasoning upon the proposition, for we think it thoroughly settled by the decisions that a pond of water, whether natural or artificial, is not to be included in the same class with turntables and other complicated machinery the inherent dangers of which are not obvious to a child.

In *Peters* v. *Bowman*, 115 Cal. 345, [56 Am. St. Rep. 106, 47 Pac. 113, 598], a pond of water had formed on defendant's land from surface water gathering thereon in certain seasons of the year as the result of the grading of a street upon which the land abutted and so closing a gully through which said surface water had theretofore been accustomed to flow and pass from the land. The plaintiff's son, aged eleven years, while riding a raft on the pond, fell off and into the water and was drowned. Judgment upon the verdict of the jury went for the defendant and plaintiff appealed from the judgment and the order. Among other things, the court therein said, referring to the turntable doctrine, which the plaintiff in that case undertook to invoke:

"But the rule of the turntable cases is an exception to the general principle that the owner of land is under no legal duty to keep it in a safe condition for others than those

whom he invites there, and that trespassers take the risk of injuries from ordinary *visible* causes; and it should not be carried beyond the class of cases to which it has been applied. And the cases to which the rule has been applied, so far as our attention has been called to them, are nearly all cases where the owner of the land had erected on it *dangerous machinery,* the consequences of meddling with which are not supposed to be comprehended by infant minds. It has often been applied to a few other cases where the owner, by some affirmative act, has caused some artificial danger to exist on his premises, as in *Branson* v. *Labrot,* 81 Ky. 638, [50 Am. Rep. 193], cited by appellant, where defendants had 'stacked a large quantity of lumber in one large and irregular pile so negligently and badly done that as the deceased, an infant, was playing near it, one of the timbers fell upon and killed him.' It is not contended by appellant that the rule of the turntable cases has ever been applied to facts like those in the case at bar; his contention is that the reasoning and philosophy of the rule *ought* to extend it to a case like the one at bar. But the same reasoning does not apply to both sets of cases. A body of water—either standing, as in ponds and lakes, or running, as in rivers and creeks, or ebbing and flowing, as on the shores of seas and bays—is a natural object incident to all countries which are not deserts. Such a body of water may be found in or close to nearly every city or town in the land; the danger of drowning in it *is an apparent open danger, the knowledge of which is common to all* (italics ours); and there is no just view consistent with recognized rights of property owners which would compel one owning land upon which such water, or part of it, stands and flows, to fill it up, or surround it with an impenetrable wall. . . . No case has been cited where damages have been successfully recovered for the death of a child drowned in a pond on private premises who had come there without invitation, while it has been repeatedly held that in such case no damages can be recovered. It was so held in *Klix* v. *Nieman,* 68 Wis. 271, [60 Am. Rep. 854, 32 N. W. 223], in *Overholt* v. *Vieths,* 93 Mo. 422, [3 Am. St. Rep. 557, 6 S. W. 74], in *Hargreaves* v. *Deacon,* 25 Mich. 1, in *Gillespie* v. *McGowan,* 100 Pa. St. 144, [45 Am. Rep. 365], and in the recent case of *Richards* v. *Connell,* 45 Neb. 467, [63 N. W. 915]."

In denying a petition for a rehearing of *Peters* v. *Bowman*, the late Chief Justice Beatty said, among other things: "A turntable can be rendered absolutely safe, without destroying or materially impairing its usefulness, by simply locking it. A pond cannot be rendered inaccessible to boys by any ordinary means. Certainly no ordinary fence around the lot upon which a pond is situated would answer the purpose; and, therefore, to make it safe, it must either be filled or drained, or, in other words, destroyed. But ponds are always useful, and often necessary, and where they do not exist naturally, must be created in order to store water for stock and for domestic purposes, irrigation, etc. Are we to hold that every owner of a pond or reservoir is liable in damages for any child that comes uninvited upon his premises and happens to fall in the water and drown? If so, then upon the same principle must the owner of a fruit tree be held liable for the death or injury of a child who, attracted by the fruit, climbs into the branches and falls out. But this, we imagine, is an absurdity, for which no one would contend, and it proves that the rule of the turntable cases does not rest upon a principle so broad, and of such rigid application, as counsel suppose. The owner of a thing dangerous and attractive to children is not always and inevitably liable for an injury to a child tempted by the attraction. His liability bears a relation to the character of the thing, whether natural and common, or artificial and uncommon, to the comparative ease or difficulty of preventing the danger without destroying or impairing the usefulness of the thing, and, in short, to the reasonableness and propriety of his own conduct, in view of all surrounding circumstances and conditions. As to common dangers existing in the order of nature it is the duty of parents to guard and warn their children, and, failing to do so, they should not expect to hold others responsible for their own want of care. But, with respect to dangers specially created by the act of the owner, *novel in character, attractive and dangerous to children, easily guarded and rendered safe* (italics ours), the rule is, as it ought to be, different; and such is the rule of the turntable cases, of the lumber-pile cases, and others of a similar character. But the owner of a thing dangerous and attractive to children is not always culpable, and, therefore,

is not always liable for an injury to a child drawn into danger by the attraction."

It would seem to be hardly necessary to cite other authorities than the above to show that the facts of this case do not bring it within the principle of the turntable and other like cases. Special attention is, nevertheless, invited to the cases referred to in *Peters* v. *Bowman, supra,* and also to the following cases: *Loftus* v. *Dehail,* 133 Cal. 214, [65 Pac. 379]; *Cooper* v. *Overton,* 102 Tenn. 211, [73 Am. St. Rep. 864, 45 L. R. A. 591, 594, 52 S. W. 183]; *Arnold* v. *St. Louis,* 152 Mo. 173, [75 Am. St. Rep. 447, 48 L. R. A. 291, 53 S. W. 900]; *Stendal* v. *Boyd,* 73 Minn. 56, [72 Am. St. Rep. 599, 42 L. R. A. 288, 75 N. W. 735]; *Sullivan* v. *Huidekoper,* 27 App. D. C. 154, [7 Ann. Cas. 196, 5 L. R. A. (N. S.) 263].

The above-named cases, notably the case of *Peters* v. *Bowman,* fully answer every point made by the plaintiff in his attempt to fasten upon the defendant responsibility for the death of his son, and clearly negative the proposition, earnestly pressed by the appellant, that the case at bar is to be differentiated from that of *Peters* v. *Bowman* upon the ground that in the latter case the alleged nuisance which caused the damage therein complained of was brought into existence by a natural cause or not by the act of the defendant, whereas, in the case at bar, the reservoir which caused the death of plaintiff's son was brought into existence solely by the act of the defendant. The clear and concise exposition of the turntable doctrine by Chief Justice Beatty, above quoted herein, does not support the proposition that the mere fact that the dangers are specially created by the act of the owner or occupier of the land on which they are maintained is itself sufficient to render the owner liable in the case of injuries to a child resulting therefrom or thereby. There are other elements superadded which are essential to fix upon the owner such liability, viz.: That the machinery must not only be novel in character and attractive to children, but "easily guarded and rendered safe." In other words, the machinery or other thing may be attractive and dangerous to children, and yet the owner of the machinery or thing would not be culpable if the dangers of the machinery or thing (which is intended for a useful purpose) cannot be removed without destroying or impairing its usefulness for the purpose it was designed to subserve.

We have found nothing in the cases cited and relied upon by the appellant in conflict with the above views or the conclusion which we have reached upon the facts as stated in the complaint. We are convinced that the complaint fails to state a cause of action for damages against the defendant, and that, therefore, the demurrer thereto was properly sustained.

Accordingly, the judgment appealed from is affirmed.

Chipman, P. J., and Burnett, J., concurred.