# CHARLESTON.

DAVE WELLMAN, ADMINISTRATOR, *etc. v.* FORDSON COAL COMPANY *et als.*

(No. 6188)

Submitted April 17, 1928.    Decided April 24, 1928.

1. MASTER AND SERVANT—NEGLIGENCE—*Possessor of Dangerous Instrumentality Must Use Due Care and Prudence to Avoid Injury to Others; Responsibility of Possessor of Dangerous Instrumentality is Not Changed by Delegating Handling Thereof to Servant; if Servant Handling Dangerous Instrumentality Negligently Injures Another, Master is Accountable as for His Own Act or Omission.*

One in possession of a dangerous instrumentality must use due care and prudence to avoid injury to others. His responsibility is no whit changed by delegating the handling of the instrumentality to his servant. The master is deemed constructively present, and if the servant in the prosecution of

his task negligently causes injury to another, the master is accountable as for his own act or omission. (p. 468.)

(Negligence, 29 Cyc. p. 460.)

2.  SAME—*Test of Master's Responsibility for Servant's Conduct is Whether Negligence Occurred in Prosecution of Master's Business.*

The test of a master's responsibility for the conduct of his servant is not whether the servant deviated from or exceeded his authority, but whether the negligence occurred in the prosecution of the master's business. (p. 468.)

(Master and Servant, 39 C. J. § 1486.)

3.  EVIDENCE—EXPLOSIVES—*Law Charges One Possessing Powder With Knowledge That it is Attractive to Immature Children, Who May be Expected to Meddle With it; Law Imposes on Possessor of Powder Highest Degree of Care to Protect Children From Injury Where Powder is Accessible to Them; Failure of Possessor of Powder to Exercise Highest Degree of Care to Protect Children From Injury Will Impose Liability for Injury.*

It is common information that powder is very attractive to immature children, and that if opportunity is presented they may be expected to meddle with it. The law charges one in possession of powder with this information, and imposes on him the highest degree of care to protect children from injury when the powder is accessible to them. Failure to exercise such care, resulting in injury, will impose liability. (p. 470.)

(Evidence, 22 C. J. § 46 ; Explosives, 25 C. J. § 11.)

4.  EXPLOSIVES—*Acts by Irresponsible Children Directly Contributing to Injury From Powder do Not Excuse Primary Negligence by One in Charge Thereof.*

The acts of irresponsible children directly contributing to an injury from the use of powder do not constitute such intervening cause as will excuse primary negligence by one in charge thereof. (p. 469.)

(Explosives, 25 C. J. § 10.)

5.  NEGLIGENCE—*Children Knowingly Permitted for Several Years to Play in Uninclosed Place Cannot be Considered Trespassers, as Regards Owner's Liability for Resulting Injuries.*

Children who have knowingly been permitted for several years to play at a place which is not inclosed and to which they have easy access cannot be considered as trespassers there. (p. 470.)

(Negligence, 29 Cyc. p. 447.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, McDowell County.

Action by Dave Wellman, administrator of Howard Wellman, deceased, against the Fordson Coal Company and another.  Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*W. B. Middleton* and *Strother, Sale, Curd & Tucker,* for plaintiffs in error.

*Harman & Howard,* for defendant in error.

HATCHER, JUDGE:

This is an action for the wrongful death of Howard Wellman, in which the plaintiff, as his administrator, recovered a joint judgment against the Fordson Coal Company and McKinley Rose.

The evidence favorable to the plaintiff (which we must accept since the verdict of the jury is for him), is as follows: The plaintiff, who was the father of the decedent, was an employee of the company, and as such occupied with his family one of the company's dwelling houses; across a bridge on the opposite side of the river from his house was the incline of defendant's mine; close to the incline was a small house, in which the daily supply of powder for the mine was kept; some sixty feet from the incline was a sand bin.  About 8:30 one night in January, 1927, while Rose and Lee Lane, employed by the company as common laborers, were near the incline loading supplies on cars to be taken to the mine, the decedent (eleven years old), his brother Pat (thirteen years old), and Clifford Thomas (thirteen years old), were playing at the end of the bridge near the supply house, where they often played; Rose asked them to get the powder out of the supply house so it could be loaded on the cars, which they did; as they were carrying out the powder one of the kegs dropped and bursted; Pat called to Rose who was working at the sand bin, that one of the kegs was bursted, and Rose replied that it was all right; the boys then secured some powder from the broken keg, left without the men seeing them again, returned across the bridge to Clifford's yard, and while they were play-

ing with the powder by throwing it on a fire, Howard received burns from which he died.

The evidence also shows that Howard was brighter than the average eleven year old boy, being in the same grade at school as his brother Pat; that the boys had lived around the mines practically all of their lives; that they understood the use of powder and knew that it would flash and burn, though none of them possessed any personal experience with it; that the company stored the powder under lock at all times; and that it was contained in the safest kind of kegs.

The legal principles applicable to these facts are thoroughly established. They are maxims of the common law. One in possession of a dangerous instrumentality must use due care and prudence to avoid injury to others. *Sic utere tuo ut alienum non laedas.* His responsibility is no whit changed by delegating the handling of the instrumentality to his servant. *Qui facit per alium, facit per se.* The master is deemed constructively present, and if the servant in the prosecution of his task negligently causes injury to another, the master is accountable as for his own act or omission. *Respondeat superior.* 18 R. C. L., 786-7; 39 C. J., p. 1289, sec. 1486; Annotation, 10 L. R. A. (N. S.) p. 368; *Jenkins* v. *Montgomery,* 69 W. Va. 795.

Here the handling of powder, an extremely dangerous instrumentality, was delegated by the defendant company to its servants Lane and Rose. In the prosecution of their task these servants negligently caused or permitted (it makes no difference which), these children to have an opportunity to secure some of the powder. That powder brought about the death of plaintiff's intestate. Why therefore should not the defendant company respond in damages?

The company says that Lane and Rose had no authority to summon or permit the children to help handle the powder. Lack of authority makes no difference in such case. The test of the company's responsibility for the conduct of its servants is not whether they deviated from or exceeded their authority, but whether the negligence occurred in the prosecution of the company's business. It was the company's busi-

ness to have the powder transported to the mine.   That trans-
portation was entrusted to Lane and Rose.   The children were
permitted by them to come in contact with the powder while
it was being transported.   Consequently the negligence of the
servants occurred while they were directly engaged in the
company's business.   ''The test as to liability of the master
is whether the servant was guilty of negligence in the doing
of his master's work.   It is not essential that the negligent
act or omission complained of should have been expressly au-
thorized by the master, or that he should have been present
when the act or omission complained of was committed, or
that he should have had knowledge of the act or omission
which caused the injury.''   39 C. J., section 1486, p. 1291.
Labatt Master and Servant, section 2274.   See also *Cosgrove
v. Ogden,* 49 N. Y. 255, 10 Am. Rep. 361, a leading case.

Another ground of defense is that the decedent was preco-
cious; that he understood the danger of having powder and
throwing it on a fire, and that he was guilty of contributory
negligence, which was the proximate cause of his death.   Such
disastrous results occur and may be expected to occur from
negligence in the care of explosives, that courts are not in-
clined to look closely for an independent cause intervening
between the injury and the negligence of those in charge of
the explosives.   *Bunyan* v. *Am. Glycerine Co.,* 230 Ill. App.
351, 358; *Mathis* v. *Tile Co.,* 85 Wash. 634, 642; 25 C. J., p.
186, section 10.   This defense, however, was not rejected by
the trial court but was fairly submitted to the jury in in-
structions given on behalf of the defendant.   ''Negligence in
such case is necessarily a mixed question of law and fact and
must be determined by the jury.''   *Blankenship* v. *Coal Co.,*
69 W. Va. 74; *Valency* v. *Rigilla,* 91 N. J. L. 307; 22 R. C. L.,
p. 148, section 31.   The jury determined this defense against
the defendants.   The verdict implies that the decedent was
too immature to understand fully the dangers of his conduct.
Therefore his acts and those of his companions do not consti-
tute such intervening cause as will relieve defendants, since
it was the original negligence of defendants which made it

possible for the irresponsible children to do the acts which resulted in the injury. 22 R. C. L., section 26, p. 141.

> ''The act of the child causing the explosion is generally held not to be such an intervening cause as will relieve the defendant of liability. An intervening cause to be a defense in an action of this kind must ordinarily come from an outside source, as an act of God, or of some human or other agency, independent of the ignorant and inexperienced conduct or omission of the child in question.'' 22 R. C. L., p. 166-7, section 51.

The company would also defend on the theory that the children were trespassers and were not wilfully or wantonly injured. Under the decisions of this state, it is clear that they were invitees or licensees in the vicinity of the supply house. The playing of children in places to which they have easy access is an incident of childhood and is to be expected. The supply house was not inclosed. They had not been forbidden to play in its neighborhood, but on the contrary had been permitted to congregate there for several years. They were, therefore, not trespassers. *Diotiollavi* v. *Coal Co.*, 95 W. Va. 692, 698; *Colebank* v. *Coal Co.*, 103 W. Va. 15, 18. But whether invitees or trespassers, the defendant company through its servants owed to them a high degree of care while permitting them access to the powder. It is a recognized fact that powder is very attractive to children. They like to see it flash. They delight in its detonation. The law implies to every one who handles powder the knowledge that it is attractive to children and charges him with a high degree of care to prevent injury to them. A leading case on this point is *Powers* v. *Harlow,* 53 Mich. 507, written by that great jurist, Justice Cooley. It was there held: ''Children must be expected to act upon childish instincts; and those who are answerable for their safety must take precautions accordingly and must expect them to meddle with anything that is likely to tempt them if left exposed to their view and within their reach.'' This is accepted law. *Harriman* v. *Ry. Co.,* 45 Ohio St. 11, 4 Am. St. Rep. 507; *Mattson* v. *Rr. Co.,* 95 Minn. 477, and the many cases therein cited. One failing to take such

precautions is answerable for a resultant injury.   11 R. C. L. 664; 25 C. J. p. 186, sec. 11; *Rine* v. *Morris*, 99 W. Va. 52, 55.

The defendants complain of the refusal of the trial court to give several of their instructions.   As the instructions rejected were not in harmony with the legal principles herein applied, the ruling thereon was proper.

Many decisions are cited by defendants as opposing a recovery in this case, including *Christie* v. *Mitchell*, 93 W. Va. 200, and *Simmons* v. *Ry. Co.*, 97 W. Va. 104.   Those decisions are based on facts so radically different from the facts in this case, as to be readily distinguishable without the need of separate comment thereon.

The judgment of the circuit court is affirmed.

*Affirmed.*