[L. A. No. 16125.   In Bank.—May 24, 1937.]

MANUEL T. MELENDEZ, Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

Hansen & Sweeney and E. D. Yeomans for Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and Bourke Jones, Deputy City Attorney, for Respondent.

THOMPSON, J.—We granted a hearing in this case after decision by the District Court of Appeal of the Second District, Division One, in order that we might give further consideration to the question of whether the rule announced in *Beeson* v. *City of Los Angeles*, 115 Cal. App. 122 [300 Pac. 993], or the doctrine of *Sanchez* v. *East Contra Costa Irr. Co.*, 205 Cal. 515 [271 Pac. 1060], should govern the determination thereof. The statement of facts is taken from the opinion by Mr. Justice Roth, sitting *pro tempore*.

"This is an appeal from a judgment entered upon an order sustaining a demurrer without leave to amend. The amended complaint in this case is predicated upon section 2, Statutes of 1923, page 675 (Deering's Gen. Laws, 1931, Act 5619), which provides:

" 'Counties, municipalities and school districts shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property in all cases where the governing or managing board of such county, municipality, school district, or other board, officer or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such street, highway, building, grounds, works or property and

failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or failed and neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition.'

"Briefly, the facts alleged in the first cause of action of said amended complaint are that on May 7, 1935, Daniel, aged 11, a son of plaintiff, was attracted to a pool of water on property belonging to respondent city, accepted an implied invitation to play thereon, and was drowned as a direct consequence of a defective and dangerous condition existing in said pool of water, known to respondent and unknown to Daniel. The pool was formed as the result of the maintenance of a storm drain by respondent. With regard to the pool and its formation, its maintenance and its use, it is alleged that for more than ten years defendant owned and maintained a storm drain, which ran from a covered conduit under a public highway into an open storm drain ditch; that a drop of several feet from the covered conduit into the open storm drain ditch caused a deep hole to form; that the banks of the open storm drain were unprotected; and over a period of years this caving-in clogged up the storm drain so that a large pool was formed, which covered the deep hole; that the pool was surrounded by a sandy beach, and was adjoining the public highway, and easily accessible thereto by a pathway; that the deep hole in this pool was completely concealed by the muddy condition of the water in the pool; that this pool was located in a populated neighborhood in which several hundred children resided; that a raft and numerous boards were on the surface of this pool; that children regularly used this pool for a playground, and waded in the pool and used the raft that was kept thereon; that the children had no knowledge, nor reasonable means of knowledge, of the deep hole in this pool; that all these conditions had existed for more than two years *to the actual notice and knowledge of the boards, officers and agents of the defendant* having the authority to remedy these dangerous and defective conditions, but the same were not remedied and no warnings were given or posted and no guards or protections of any nature whatever were furnished; and that these conditions could have been removed at a nominal

cost to defendant without in any manner impairing the usefulness of the storm drain.

"Specifically, with regard to the drowning of Daniel, it is alleged that while using the raft in the pool, which was, except for the deep hole referred to, of shallow depth, Daniel, unaware of the deep hole, fell into it and was drowned. With reference to the character and formation of the pool, the complaint specifically alleges:

" ' . . . said pool so formed was about forty-five (45) feet wide and about sixty (60) feet long; that the water in said pool was very muddy and was so cloudy and opaque that it was not at all transparent, and the depth of the water in said pool, or any part thereof, could not be determined by looking into said pool; that all of the water in said pool was between one and two feet deep with the exception of the depth of the water in the hereinafter described pit, trap, or hole; that at one place in said pool there was a deep pit, trap, or hole which was over seven (7) feet in depth and with a circular diameter at the top thereof of approximately ten (10) feet, said deep pit, trap, or hole being just south of where said covered storm drain conduit emptied into said open storm drain ditch; that said deep pit, trap, or hole was caused, formed and constructed by said water flowing from said covered storm drain conduit, and dropping said one to two and one-half feet into said open storm drain ditch; that on said pool there floated numerous boards, poles, stakes, and a raft which had been constructed by several boards bound together and said raft was about five feet long and about two and one-half feet wide; that there was a pathway running from the south side of said Pico boulevard down the slope of the open storm drain ditch to the side of the pool; that said pool was easily accessible from said Pico boulevard by using said path; that around said pool there was a sandy beach ranging between ten and fifteen feet wide; that there was no guard, fence, covering, protection, or warning around said pool, around said storm drain ditch, or near said pool or storm drain ditch; that all the foregoing conditions, except where expressly stated to be otherwise, existed on the 7th day of May, 1935, and had existed for more than two years prior thereto; . . . '

"The second cause of action alleges that Ralph, aged 13, brother of Daniel, hearing Daniel's cries for help, rushed

into the pool and was drowned in the attempt to save his brother's life.''

■ It is clear from the recited allegations that the complaint is framed to state a cause of action under the attractive nuisance doctrine as recognized in this jurisdiction if it may, under the facts, be so alleged. This exception to the general rule that the owner of land is under no obligation to keep it in a safe condition for trespassers is based upon the principle that one who maintains upon his land something in the nature of a trap or concealed danger is under a duty to use ordinary prudence and foresight to prevent an injury to children which might be expected where it can be guarded against without placing an undue burden upon the owner of the land and his right to make a beneficial use of it. (*Peters* v. *Bowman,* 116 Cal. 345 [47 Pac. 113, 56 Am. St. Rep. 106]; *Cahill* v. *Stone & Co.,* 153 Cal. 571 [96 Pac. 84, 19 L. R. A. (N. S.) 1094]; *Faylor* v. *Great Eastern Q. Min. Co.,* 45 Cal. App. 194 [187 Pac. 101]; *Morse* v. *Douglas,* 107 Cal. App. 196 [290 Pac. 465]. See, also, 19 Cal. L. Rev. 86; 11 Harv. L. Rev. 46 and 434; Restatement of the Law of Torts, sec. 339, and Harper on Torts, sec. 93, p. 219.) ■ As indicated, this duty of the occupier of land is limited by a sort of balancing of the opposing conveniences and, on this basis, it is generally held that pools and ponds of water do not come within the attractive nuisance doctrine. The reasons for refusing to make an application of the doctrine in such cases are stated in *Peters* v. *Bowman, supra,* where it is said: ''A body of water—either standing as in ponds and lakes, or running as in rivers and creeks, or ebbing and flowing, as on the shores of seas and bays—is a natural object incident to all countries which are not deserts. Such a body of water may be found in or close to nearly every city or town in the land; the danger of drowning in it is an apparent open danger, the knowledge of which is common to all; and there is no just view consistent with recognized rights of property owners, which would compel one owning land upon which such water, or part of it, stands or flows to fill it up or surround it with an impenetrable wall.'' In the same case on denial of a petition for rehearing, it is said: ''As to common dangers existing in the order of nature, it is the duty of parents to guard and warn their children, and, failing to do so, they should not expect to hold others

responsible for their own want of care. But, with respect to dangers specially created by the act of the owner, novel in character, attractive and dangerous to children, easily guarded and rendered safe, the rule is, as it ought to be, different; and such is the rule of the turntable cases, of the lumber-pile cases, and others of a similar character." And, further indicating that the decision was based upon a balancing of the conveniences rather than upon a lack of attractiveness or danger: "His (the owner's) liability bears a relation to the character of the thing, whether natural and common or artificial and uncommon, to the comparative ease or difficulty of preventing the danger without destroying or impairing the usefulness of the thing, and, in short, to *the reasonableness and propriety of his own conduct, in view of all the circumstances and conditions.*"

The rule of *Peters* v. *Bowman, supra,* is followed in *Polk* v. *Laurel Hill Cemetery Assn.,* 37 Cal. App. 624 [174 Pac. 414], and applied to the case of *Beeson* v. *Los Angeles,* 115 Cal. App. 122 [300 Pac. 993], a case on all fours with the one before us for determination. There also, the pool of water was formed by a storm drain in which muddy water stood at an average depth of approximately one foot except at one end where there was a pit or hole about seven or eight feet in depth concealed by the muddiness of the water and the debris, and caused by the emptying of the water into the open drainage ditch from a cement conduit with such force as to dig out the floor of the open drainage ditch. There also notice of the dangerous condition of the ditch and of the fact that children played there and failure to remedy the situation were alleged in the complaint. It was held that the doctrine of attractive nuisance did not apply on the ground that the concealed hole was not an artificial contrivance or appliance maintained by the owner of the ditch and, on this ground, the case was distinguished from *Sanchez* v. *East Contra Costa Irr. Co.,* 205 Cal. 515 [271 Pac. 1060]. In that case a child fell into an open irrigation ditch of the average depth of three feet and slipped into a tunnel which carried the water under a creek. The water in the canal was muddy and the opening of the tunnel could not be seen. It was held that the shallow muddy water in the canal, the concealed opening of the tunnel of a much greater depth which was wholly unguarded constituted a trap; that, while

the children assumed the risk of the open, obvious, notorious danger incident to the canal, they did not assume the risk of an unknown, concealed and unguarded danger and therefore the case came within the doctrine of attractive nuisance.

These two cases are not at variance when weighed in the light of all the circumstances. In the former case the court took into consideration the common knowledge that the perils of water are instinctively known even by a boy of ten years of age and the further fact that water running over soil operates against the probability of a continuous even bed. As is said in *Tavis* v. *Kansas City*, 89 Kan. 547 [132 Pac. 185] : ''All know that there are many pools in every running stream, and when the bed of the stream is not rock, deep places are found below every bridge and culvert through which much water passes. It is not practicable to provide openings in bridges or culverts large enough to carry away water as rapidly as it falls in freshets, and the force with which the dammed water goes through the openings under such circumstances is likely to erode the soil or bed of the stream below the bridge. The same effect is noticeable at every bend in the stream, and also wherever there is a tree or other obstruction along the stream which affects the flow of the water.'' These matters of common knowledge should be applied in the instant case and differentiate it from the Sanchez case. In the latter case there was a concealed contrivance which no one would suspect. And common knowledge again tells us that the remark of the learned justice in the Beeson case that the boy in the Sanchez case either slipped or was ''sucked'' into the syphon was justified.

We are compelled to conclude from what has been said that the rule announced and applied in the Beeson case should govern the disposition hereof. Accordingly the judgment should be and it is hereby affirmed.

Shenk, J., Langdon, J., Curtis, J., and Seawell, J., concurred.

Rehearing denied.