[Civ. No. 14768.   First Dist., Div. Two.   Jan. 16, 1952.]

ELMER W. BETTS, Respondent, v. THE CITY AND COUNTY OF SAN FRANCISCO, Appellant.

Dion R. Holm, City Attorney, and William F. Bourne, Deputy City Attorney, for Appellant.

Partridge & O'Connell, Robert G. Partridge and John P. Whitney for Respondent.

NOURSE, P. J.— Plaintiff had a verdict for $8,500 in damages for the death by drowning of his son in an artificial reservoir maintained by the city and county in the playground area of Golden Gate Park.  This reservoir was located on Strawberry Hill which is an island-like body of land in the middle of Stow Lake.  It was designed to provide an artificial waterfall for the pleasure of the public on Sundays

and holidays and also for purposes of irrigating some of the lower areas. It was completely surrounded by a 4½ or 5-foot picket fence in good condition. At one end two pipes or cement openings were maintained—one for pumping water into the reservoir and one for drawing it out. From the pipe or hood through which the water was spilled into the reservoir ran a cement spillway at a steep slant into the body of the reservoir. On the day of the accident this spillway had become slippery from moss and water.

Plaintiff's son was 7 years old. He was playing about the reservoir with another boy of about the same age. When they decided to get a drink of water out of the pipe where the water was thrown upon the spillway they climbed over the picket fence and descended the side of the reservoir. The deceased went first and, while trying to drink out of the pipe, lost his footing and slipped into the water. His companion tried to rescue him but he also slipped on the mossy spillway and both boys were drowned.

Over defendant's objection the plaintiff was permitted to show that an 8-year-old boy was drowned in the same reservoir about one year previous to this incident. The defendant objected to this evidence on the ground that the Public Liability Act of 1923 (now Gov. Code, § 53051) was not involved. Objection is now made to the admission of this evidence and to the instruction applying the statute. Plaintiff put his case mainly on the attractive nuisance doctrine and the trial court submitted that issue to the jury on instructions tendered by plaintiff. The defendant on this appeal makes the contention that the attractive nuisance doctrine was not applicable under the facts as a matter of law.

A clear statement of appellant's position is found in *Peters* v. *Bowman*, 115 Cal. 345, 350 [47 P. 113, 598, 56 Am.St.Rep. 106], where the court said: "A body of water—either standing as in ponds and lakes, or running as in rivers and creeks, or ebbing and flowing, as on the shores of seas and bays—is a natural object incident to all countries which are not deserts. Such a body of water may be found in or close to nearly every city or town in the land; the danger of drowning in it is an apparent open danger, the knowledge of which is common to all; and there is no just view consistent with recognized rights of property owners, which would compel one owning land upon which such water, or part of it, stands or flows, to fill it up, or surround it with an impenetrable wall."

In accord are *Polk* v. *Laurel Hill Cemetery Assn.*, 37 Cal.

App. 624, 634 [174 P. 414], where an 8-year-old boy was drowned in an open and unfenced reservoir. A demurrer to the complaint was sustained on the ground that the doctrine was not applicable, the court concluding that "a pond of water, whether natural or artificial, is not to be included in the same class with turntables and other complicated machinery the inherent dangers of which are not obvious to a child." *Reardon* v. *Spring Valley Water Co.*, 68 Cal.App. 13 [228 P. 406], follows the Peters and Polk cases. There a fence surrounding a reservoir of water was out of repair. A boy crawled through an opening, boarded a rowboat and was drowned. The court affirmed an order sustaining a demurrer on the authority of the Peters and Polk cases. *Beeson* v. *Los Angeles*, 115 Cal.App. 122 [300 P. 993], followed the same rule. Then came *Sanchez* v. *East Contra Costa Irr. Co.*, 205 Cal. 515 [271 P. 1060], where the irrigation district maintained a hidden and unguarded siphon at the bottom of its ditch through which the water rushed at great speed. This was held to be a hidden danger and judgment went for the plaintiff whose son was sucked into this siphon and drowned. This case was discussed at length in *Melendez* v. *City of Los Angeles*, 8 Cal.2d 741 [68 P.2d 971], where two boys were drowned while playing in an open drain sewer. The court affirmed the order sustaining a demurrer without leave to amend. The Supreme Court approved the Peters, Polk and Beeson cases and distinguished the Sanchez case on the ground that there the dangerous siphon was hidden, unprotected, and unguarded. *Demmer* v. *City of Eureka*, 78 Cal.App.2d 708 [178 P.2d 472], follows the above authorities.

Respondent's effort to distinguish these cases on the basis of the "hidden or concealed" danger theory is not effective. It is a matter of common knowledge among children and adults that wet concrete is slippery and that, when on a slanting incline as is so prevalent on the streets and sidewalks of San Francisco, it does not provide a safe footing. In surrounding the reservoir by a substantial fence the city gave to all persons young and old sufficient notice that this reservoir was not a place of public recreation and that it was certainly not a place which the public could use for drinking water. The so-called hidden danger in the concrete intake was to the contrary a natural contrivance for carrying the water into the lake, and, when used as a footpath, was an open and obvious source of danger.

Appellant also contends that it was error to submit to the

jury the question of the liability of the city under the Public Liability Act. A persuasive argument is made that such act applies only when the injured party was using the public property, or facility, in the ordinary and usual manner for which the property was maintained. Respondent relies on the opinion of the Supreme Court in *Gibson* v. *County of Mendocino,* 16 Cal.2d 80 [105 P.2d 105], which casts considerable doubt on the distinction between an invitee and a licensee in such cases.

The applicable rule is well stated in *Beeson* v. *City of Los Angeles,* 115 Cal.App. 122, 132 [300 P. 993], where the court said: ''In all of the cases thus far decided the injured party was using the street in which he was injured, or the property which caused the injury, in the usual and ordinary manner in which it was contemplated that the street or property would be used. We are of the opinion that in passing and adopting section two of the act approved June 13, 1923, the legislature intended to limit the liability of the city for damages resulting from defective streets, works or property to damages suffered in the ordinary, usual and customary use thereof.'' Other cases in accord are cited in 9 Cal.Jur. 10-Yr. Supp. (1949 Rev.) 697-698. The Gibson case can be readily distinguished. There the plaintiff was injured in opening a door of the county courthouse on her way to take a short cut through the building and to make an exit through another door. It was held that the doors and corridors were maintained for public transit, and that, though the plaintiff had no official business to transact in the courthouse she was nevertheless a licensee and not a trespasser.

A different question arises when public property is being used by a trespasser for a forbidden private purpose. Thus, if an adult finds a reservoir completely surrounded by a protecting fence as a warning to all to keep out but he, in disregard of the warning, scales the fence and enters the reservoir to take a swim, or to try for fish, he is making use of the reservoir for a use for which it was not maintained by the public. In such a case it would seem clear that he would not come under the terms of the Public Liability Act.

Judgment reversed.

Goodell, J., and Patterson, J. pro tem., concurred.

A petition for a rehearing was denied February 15, 1952, and respondent's petition for a hearing by the Supreme Court was denied March 13, 1952. Gibson, C. J., and Carter, J., were of the opinion that the petition should be granted.