[S. F. No. 19761. In Bank. Oct. 24, 1958.]

KEITH REYNOLDS, a Minor, etc., Respondent, v. MELVILLE E. WILLSON et al., Appellants.

Leonard, Hanna & Brophy, Donald R. Brophy, Stammer, McKnight & Barnum and Wild, Christensen, Barnard & Wild for Appellants.

Nicholas H. Dubsick, Dubsick & Helon, Bruce Walkup and William B. Boone for Respondent.

SHENK, J.—This is an appeal by the defendants from an order denying their motion for a judgment notwithstanding the verdict in an action for personal injuries.

The plaintiff is Keith Reynolds, a boy 2 years and 3 months of age at the time of the accident which occurred on January 31, 1953. He is the youngest son of Dr. and Mrs. William J. Reynolds, Jr., who were living at the time with their family of four children at the southeast corner of Wilson Avenue and Buckingham Way in the Fig Garden residential district in the city of Fresno. The defendants, Mr. and Mrs. Melville E. Willson, occupied their residence at the southwest corner of Van Ness Avenue and Buckingham Way. The homes of the two families occupy the full frontage of the block on Buckingham Way between Wilson and Van Ness Avenues with a vacant lot between the houses. The defendants' lot faces on Van Ness Avenue with a frontage of 135 feet, and extends 285 feet on Buckingham Way. Their residence was built in 1930 in what was then a sparsely settled subdivision. The area has since developed into a well occupied section with some 30 families residing in the immediate vicinity. At the time of the accident, approximately 50 or 60 children ranging in age from two years to teenage resided in the neighborhood. An elementary school is located a few blocks away. The defendants had occupied this property since April 1951.

At the rear of their property the defendants maintained a swimming pool. It is about 20 by 40 feet in dimensions and in depth is graduated from about 3 feet on its north side to 9 feet 4 inches on its south side. The shallow portion is toward Buckingham Way with steps leading down from ground level in the northwest corner. A stucco wall extends most of the way around the defendants' property. There is a 10½ foot opening in the wall on the Buckingham Way side in the garage area with gate bolts on each side of the opening but no gate was then maintained. A concrete pavement forms an apron in front of the garage and leads into a walkway toward the residence and into a walkway to dressing rooms back of the garage. Buckingham Way is not a through street,

is relatively free from traffic and children were accustomed to resort to it for recreation. The swimming pool was visible therefrom by children and adults through the open gateway. At the time of the accident the cost of installing a gate in the opening in the stucco wall was not more than $25.

The Willsons and the Reynolds were neighborly and invitations to use the swimming pool were extended by the Willsons to the Reynolds and their children. The Reynolds took advantage of the invitation and used the pool on many occasions. Other children in the neighborhood enjoyed a like privilege during the swimming season which ended in September. A general condition, attached by the defendants to the use of the pool, was to the effect that when small children were to use the pool or play in the adjoining area, an adult should be present. The plaintiff was taken to the pool when adults were present during the swimming seasons of 1951 and 1952. On at least one occasion Mrs. Willson observed the plaintiff making his way toward the pool unattended and she returned him to his home.

At the close of the 1952 season the water in the pool was only partially drained. At the close of previous seasons it had been fully drained. Mr. Willson testified that the pool was left in a partially filled condition at the close of the 1952 season in order to prevent his and other children from playing therein and injuring themselves on the concrete surface. At the time of the accident water covered the concrete floor about to the base of the steps at the shallow end of the pool. Near the center of the floor was an abrupt decline to deeper water. In the winter months just prior to the accident the pool, as thus partially filled, had accumulated dirt, decayed leaves from nearby trees, and other decomposed material. Algae and other substances had accumulated and settled on the concrete surface beneath the water, causing it to become slippery when stepped upon.

On the day of the accident Mrs. Reynolds left in the early morning with her three older children for Yosemite Valley. Dr. Reynolds left for his office a little later. The plaintiff child stayed at home in the care of a maid-housekeeper. She put the child down in his room for his nap about 3:30 in the afternoon. When he was supposedly asleep she engaged in a telephone conversation in another room. In about 15 minutes she returned to the boy's room and found him missing. Apparently he had climbed out of a window. She searched the

home and neighborhood but failed to find him. Dr. Reynolds returned to his home about 4 p. m. He joined in the search. He entered the defendants' yard through the opening in the wall on Buckingham Way which led to the swimming pool and saw the boy lying face down in the water. He went into the pool to rescue the child. Because of the slippery condition of the bottom, he was unable to carry him to the steps. As soon as possible artificial respiration was administered. Adrenalin was injected directly into the boy's heart. An ambulance was called and upon its arrival oxygen was administered, and the boy was taken to a hospital. He was unconscious for five or six days and at the end of 10 days was paralyzed. Since that time he has made a partial recovery but is afflicted with the symptoms of cerebral palsy and his brain and nervous system are permanently damaged.

The plaintiff, through his father as guardian ad litem, sued for damages on behalf of the child and obtained a verdict in the sum of $50,000. The defendants do not complain of the amount.

The action was brought apparently on three theories of liability; first, on the theory outlined in section 339 of the Restatement of the Law of Torts, which provides as follows: "A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth, do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

The second was on the theory that if section 339 is not applicable to the facts of the case or should not be followed, another basis of liability was the physical condition of the pool, maintained as it was at the time of the accident as constituting a peril in the nature of a "trap" as that term has come to be known to the law of this state.

The third theory was that under the facts the defendants

owed to the plaintiff the duty of ordinary care as an invitee on the premises.

The action was commenced and the litigation was conducted throughout on behalf of the plaintiff, by allegation, proof, argument to the jury and on appeal, on all three theories, and from the standpoint that the liability of the defendants depended on questions of fact to be determined by the jury.

As noted, the jury returned a verdict in favor of the plaintiff and the only question to be determined on the appeal is whether there is sufficient competent evidence in the record to support the verdict on any of the theories relied upon.

■ The rules which govern the disposition of a motion for judgment notwithstanding the verdict, as in this case, are familiar. Such a motion may be granted only if a motion for a directed verdict should have been granted (Code Civ. Proc., § 629). ■ The power of the court to direct a verdict is subject to the same limitations as its power to grant a nonsuit. (*Pellett* v. *Sonotone Corp.* (1945), 26 Cal.2d 705, 708 [160 P.2d 783, 160 A.L.R. 863].) ■ A nonsuit may be granted only where, disregarding conflicting evidence on behalf of the defendants and giving to plaintiff's evidence all the value to which it is legally entitled, therein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff. (*Estate of Lances* (1932), 216 Cal. 397, 400 [14 P.2d 768]; see also 24 Cal.Jur., p. 913, and cases cited.)

In conformity with the foregoing rules the main if not the only problem presented is whether (disregarding all conflicting evidence favorable to the defendants), there is sufficient substantial evidence to support the verdict on any tenable theory of liability.

It is contended by the plaintiff that the theory of liability prescribed by section 339 of the Restatement of the Law of Torts, above quoted, is applicable to the facts of the case; that the conditions therein required to impose such liability have been met, and that such a theory is not inconsistent with, but is in conformity with the law of this state.

■ To meet the requirements of section 339 of the Restatement of the Law of Torts, it appears that the defendants were the possessors of the land; that the swimming pool was a structure artificially constructed thereon; that the plaintiff was an infant of tender years and a trespasser

at the time of the accident as contemplated by the section; that the nature of the structure was such that the defendants knew that children were likely to trespass thereon; that the condition in which the pool was maintained at the time was such that the defendants realized or should have realized it involved an unreasonable risk of death or serious bodily harm to children[1]; that because of his youth the plaintiff did not discover the condition of the pool or realize the risk involved in coming within the area made dangerous by it, and that the cost of making it safe against children was slight as compared to the risk to young children trespassing thereon.[2]

With the limitations placed upon the reviewing court in the consideration of the evidence on an appeal of this sort it must be concluded that the conditions necessary to establish liability on the theory of section 339 have been met.

The defendants maintain that if this be so and liability thus attaches under their situation the doctrine of attractive nuisance will apply to every possessor of land maintaining a private swimming pool. But such is not the case. ▇ It is established in this state that a private swimming pool is not an attractive nuisance as a matter of law. (*Lake* v. *Ferrer* (1956), 139 Cal.App.2d 114 [293 P.2d 104]; *Wilford* v. *Little* (1956), 144 Cal.App.2d 477 [301 P.2d 282].) The manner of its maintenance and use may, however, be such as to impose the duty of ordinary care on the possessor toward children of tender years notwithstanding they may technically occupy the position of trespassers at the time. That is the theory of liability imposed by section 339 whether the structure maintained be a swimming pool or some other artificial structure maintained upon his property.

The plaintiff does not rely solely upon the liability of section 339 but takes the position that the verdict is also sufficiently supported on both of the other two theories. With this we must agree at least as to the second theory.

▇ The second theory is that the possessor of land is liable for the negligent maintenance on his premises of an

---

[1]The defendant Melville E. Willson testified that after the close of the 1952 swimming season he realized that the condition in which he had left the pool after the former season was unsatisfactory even for the safety of his own children, so he decided to try to make it safer by partially filling it. This he did in December, the month before the accident happened. It was after the pool had been thus partially filled that the algae accumulated under the shallow water near the steps.

[2]It was in evidence that the aperture in the fence through which the plaintiff gained access to the pool could have been closed or otherwise made safe from entrance by children at an expenditure of about $25.

artificial instrumentality which might constitute a dangerous contrivance in the nature of a "trap" and be encountered by children of tender years incapable of contributory negligence, and who are known by the possessor to enter or would be expected to enter his premises as trespassers. Such a case was *Sanchez* v. *East Contra Costa Irr. Co.* (1928), 205 Cal. 515 [271 P. 1060]. There the defendant had constructed a syphon under a creek for the purpose of conveying therein the water of its drainage canals. The plaintiff's 5-year-old son was playing in the shallow water of the canal, was sucked into the syphon and drowned. In an action by the father for the wrongful death of his son it was held that without some warning of its presence the defendant was liable for the negligent maintenance of the syphon. All of the elements necessary to establish liability under the doctrine of ordinary care were found to be present. The court held the canal with its unguarded syphon to be the "trap" and with it the shallow water as the bait of the trap.

The Sanchez case was preceded by the case of *Faylor* v. *Great Eastern Q. Min. Co.* (1919), 45 Cal.App. 194 [187 P. 101], where the defendant was held liable for the negligent maintenance of an unguarded tunnel of a quicksilver mine. In an action for the wrongful death of a boy entering the tunnel, the negligent maintenance of the tunnel was held to have constituted a trap even though the status of the boy at the time was that of a trespasser. Other cases to the same effect are *Long* v. *Standard Oil Co.* (1949), 92 Cal.App.2d 455 [207 P.2d 837], and *Blaylock* v. *Jensen* (1941), 44 Cal. App.2d 850 [113 P.2d 256]. Liability on the trap theory is well established. Under it the test of ordinary care may be applied although the injured party be a trespasser. As so established in this state it is not necessary that the damage or harm be inflicted by conscious intention or design on the part of the possessor of the premises.

 In the present case the jury was entitled to find that when in December the defendants partially filled the pool with water nearly to the steps in an endeavor to make it safer for their own children they had in effect made it more attractive to young children such as the plaintiff and that by maintaining the pool in its then condition they were guilty of maintaining a trap as to the plaintiff and responsible to him under the doctrine of ordinary care.

 It should be said here, that it is the generally accepted rule as recognized by comment (b) to section 339, that the

duty of the possessor does not extend to dangerous conditions on the land which are obvious even to children, such as the usual risks of fire, water, falling from a height and the like (see Prosser on Torts, 2d ed. 1955, 441-442). When however, there are, in addition to the usual risks, concealed dangers not obvious, especially to children, the trap theory may be applied.

In view of the fact that the order must be affirmed for other reasons, it is unnecessary to determine the extent to which the defendants owed a duty to the plaintiff as an alleged invitee. It is true beyond question that the plaintiff was included among those invited by the defendants to use the pool, but a limitation was imposed by them that young children should not be permitted to use it except when an adult was in attendance. What effect that limitation and the extent of such an invitation generally had upon the duty of the defendants toward the plaintiff under the circumstances we do not decide.

The defendants rely on *Wilson* v. *City of Long Beach* (1945), 71 Cal.App.2d 235, where it is said at page 241 [162 P.2d 658, 163 P.2d 501]: "The following from 38 American Jurisprudence 779 is applicable: 'The accepted view is that the tender age of a child, rendering it incapable of looking out for its own safety, does not raise a duty where none otherwise exists. . . . It is said that the responsibility for avoiding injury to a trespassing child from defective or dangerous premises lies with the parent or legal custodian of the child rather than with the proprietor of the premises.' In 19 California Jurisprudence 624 a similar statement occurs: 'In the absence of circumstances which bring a case under the attractive nuisance doctrine, it is said that an owner of land owes no other duty to a child who is trespassing . . . than he owes to an adult trespasser.' " The foregoing, insofar as it purports to state the general principles concerning the duty of a land owner to a trespassing child is incomplete. Insofar as it assumes to place the responsibility on the parents and relieve a third party tortfeasor it does not state the law. ▮ On the contrary the negligence if any of the parents is not imputable to the child in an action by the latter. (*Crane* v. *Smith* (1943), 23 Cal.2d 288, 301 [144 P.2d 356]; *Zarzana* v. *Neve Drug Co.* (1919), 180 Cal. 32, 35-37 [179 P. 203, 15 A.L.R. 401]; *Staggs* v. *Atchison, Topeka & S. F. Ry. Co.* (1955), 135 Cal.App.2d 492 [287 P.2d 817].) Otherwise the foregoing statement may be accepted in its generalities but the relevant

facts do not bring the present case within its application. We think the correct rule is stated in section 339 of the Restatement of the Law of Torts. However, it is asserted by the defendants that section 339 is not applicable under the law of this state; that the cases in this state are inconsistent with the declarations of liability and duties stated in that section. Upon examination it is found that this is not so. For example in *Peters* v. *Bowman* (1896), 115 Cal. 345 [47 P. 113, 598, 56 Am.St.Rep. 106], it appeared that the plaintiff's son was drowned when he fell from a raft on a pond on the defendant's premises. The court there held that the doctrine of the turntable cases had no application to a standing body of water. No dangerous condition existed in the pond other than that common to most bodies of water—the possibility of drowning. The pond was regarded by the court as a natural condition on the land and the facts indicate that the decedent was capable of appreciating the hazard of going upon the pond.

In *Melendez* v. *City of Los Angeles* (1937), 8 Cal.2d 741 [68 P.2d 971], the decedent, a boy of 11 years, was drowned in a pool of water created by the defendant city's storm drain. A 7-foot hole was located below the drain outlet in an otherwise shallow pool. That hole was concealed by the muddy condition of the water. The court distinguished *Sanchez* v. *East Contra Costa Irr. Co., supra,* 205 Cal. 515 (citing *Peters* v. *Bowman, supra,* 115 Cal. 345), on the ground that the danger of drowning in a body of water is an open danger known to all. Section 339 of the Restatement of the Law of Torts is cited by the court apparently with approval and as consistent with the law of this state.

In *Polk* v. *Laurel Hill Cemetery Assn.* (1918), 37 Cal.App. 624 [174 P. 414], the decedent, a child of 8 years, fell into and drowned in a reservoir which the defendant maintained on its premises. The court held that the so-called turntable cases were of no application and affirmed the judgment sustaining the demurrer. It was held that no dangerous conditions existed in the maintenance of the reservoir; that if any dangers existed they were visible to all and were apparent to a child of the decedent's years, and (relying on *Peters* v. *Bowman, supra* (1896), 115 Cal. 345) that trespassers must bear the risks of injuries inflicted by such visible dangers. The opinion states at page 634 that a pond of water is not to be included in the same class with turntables and dangerous machinery.

In *Reardon* v. *Spring Valley Water Co.* (1924), 68 Cal.App.

13 [288 P. 406], the decedent, a child of 5 years, boarded a row boat on defendant's reservoir, fell from the boat, and was drowned. The court held on the authority of the Peters and Polk decisions that the plaintiff failed to state a cause of action.

In *Beeson* v. *City of Los Angeles* (1931), 115 Cal.App. 122 [300 P. 993], the decedent, a 10-year-old boy, drowned after falling into a water filled hole in the defendant's storm drain. The court pointed out that a pond of water is not in and of itself an attractive nuisance in California. The facts do not show that any unusual hazard was present in the pool. The court distinguished the Sanchez case, *supra,* reciting the facts which made the syphon in that case a "danger and a trap."

In *King* v. *Simons Brick Co.* (1942), 52 Cal.App.2d 586 [126 P.2d 627], damages were sought for the wrongful death of plaintiff's 12-year-old son, who drowned in a water filled excavation on the defendant's premises. The pit was filled with opaque water and it was alleged that, ". . . after he had waded for awhile in the pit from an unsubmerged projection of the land, in waters 18 inches deep, he plunged again into the waters at about the same point only to reach instantly a depth of 18 feet, from which he was unable to swim, and was drowned. . . ." Factually, the King case was close to the Melendez case. The court in sustaining a demurrer stated at page 590: "It is only in those cases where a dangerous trap on premises otherwise safe is concealed from view or when an artificial device attractive to children, is left exposed and upon premises accessible, open and unguarded that the owner is liable. . . ."

In *Demmer* v. *City of Eureka* (1947), 78 Cal.App.2d 708 [178 P.2d 472], decedent, a 10-year-old boy, was drowned when he fell from a floating log. Again, no dangerous condition or trap existed in the body of water except the ever present danger of drowning. The danger was held to be open and obvious to any one including the trespassing boy.

In another case (*Betts* v. *City & County of San Francisco* (1952), 108 Cal.App.2d 701 [239 P.2d 456]) the decedent, a 7-year-old child, was drowned in a reservoir owned by the defendant city. The child entered the reservoir area by climbing a picket fence. He slipped on a moss-covered spillway, fell into the reservoir and drowned. It was held that the spillway was an obvious hazard visible to anyone with no liability for its maintenance on the part of the defendant.

In *Ward* v. *Oakley Co.* (1954), 125 Cal.App.2d 840 [271 P.2d 536], two of the plaintiff's minor children (of an undisclosed age) were drowned when wading in a slough on the defendant's premises. The mud under the surface of the water consisted of a deposit of fine sand and colloidal materials. The complaint alleged that when the children waded into the slough, they were dragged and sucked under the water by the mud; that the dangerous condition of the area was not apparent or obvious to children and that it was practical to fence the slough and to take other precautions. Six children had previously drowned in the slough. It was held that the attractive nuisance doctrine did not apply to bodies of water but that recovery might be had if a "hidden or concealed trap" could be shown. The opinion states the essential elements of a cause of action under the trap theory to be: "(a) that the dangerous hazard causing death be artificially created by the owner, (b) it be so concealed as to constitute a trap, and (c) that it can be readily guarded without destroying its usefulness or placing upon the owner an undue burden." The court reviews many cases bearing on this subject and concludes that the peculiar characteristic of the mud was that of a natural rather than an artificial condition.

*Knight* v. *Kaiser Co.* (1957), 48 Cal.2d 778 [312 P.2d 1089], does not preclude the application of section 339 of the Restatement of the Law of Torts to the present case. In that case, the decedent, a boy of 10, was suffocated when one of the defendant's sand piles collapsed on him. The sand was stored on the defendant's private property along with other building material, machinery and supplies. The discussion in that case emphasizes the obvious nature of the hazard involved in playing or digging in a sand pile. This court stated at page 782: "In Restatement of the Law of Torts, volume 2, section 339, page 922, it is said that the duty of the possessor of land 'does not extend to those conditions the existence of which is obvious even to children and the risk of which is fully realized by them. This limitation of the possessor's liability to conditions dangerous to children, because of their inability to appreciate their surroundings or to realize the risk involved therein, frees the possessor of land from the danger of liability to which he would otherwise be subjected by maintaining on the land the . . . implements which are essential to its normal use. . . .' " It was held, consistent with section 339 of the Restatement of the Law of Torts, that the hazard of playing in the sand pile

is an open and obvious one for which the possessor could not, under the facts of that case, be held liable.

 From the foregoing cases and others which might be cited, it is apparent that recovery is granted or denied depending on the facts of each case. Where the elements of section 339 have been fulfilled or the existence of a trap has been sufficiently shown recovery has ordinarily been awarded on the basis of want of ordinary care on the part of the defendant. Where, as in the cases relied on by the defendant, one or more elements of section 339 have failed of proof and no evidence of a trap or other basis of liability proved, recovery has been denied. Recovery in the present case is consistent with the established law of this state.

The order is affirmed.

Gibson, C. J., Carter, J., and Traynor, J., concurred.

SPENCE, J., Dissenting.—It has been said that "hard cases make bad law." Such appears to be the situation here; but this case is a hard one only in the sense that a young child has suffered an unfortunate injury. The question involved, however, is whether liability for that unfortunate injury was properly imposed upon the defendant landowners under the circumstances presented by the record. I am of the opinion that such liability was not properly imposed, and that the majority opinion sustains an order which cannot be sustained under the settled law of this state.

The fundamental question presented is whether there was a violation of any duty owed by the defendant landowners toward the trespassing child. This question in turn depends upon the nature and extent of any duty owed by the defendant landowners toward the trespassing child with respect to the condition of the landowners' premises.

The answer to this fundamental question cannot be determined by a mere reference to section 1714 of the Civil Code, which provides in general terms that liability may ordinarily be predicated upon "want of ordinary care." The application of that section is not universal, as it depends upon the relationship of the parties. Traditionally, as will be seen from the authorities hereinafter cited, the duty of a landowner toward a trespasser with respect to the condition of the premises has been held by this court, and practically every other court, to be definitely less than the general duty to exercise ordinary care, which last mentioned duty is owed

by the landowner to the business visitor. There is sound reason for this differentiation in the nature of the duty owed, and it is firmly embedded in our law. It is neither an anomaly nor a mere remnant of ancient law. On the contrary, a somewhat similar concept is embodied in comparatively recent legislation which denies liability for mere want of ordinary care where the parties stand in the relationship of the driver of an automobile and his social guests, whether the latter be adults or children. (Veh. Code, § 403.)

Heretofore, three members of this court have expressed their dissatisfaction with the settled law of this state on the subject of the duty owed by the landowner to trespassing children. Their views are set forth in the dissenting opinion of Mr. Justice Traynor in *Knight* v. *Kaiser Co.*, 48 Cal.2d 778, 785-792 [312 P.2d 1089]. They there advocated "disapproving the former cases." (P. 792.) While I do not agree that the numerous prior decisions should be disapproved, Mr. Justice Traynor made a forthright approach to the problem in that dissent. The dissenting justices in *Knight* v. *Kaiser Co.*, *supra*, have now joined in the opinion prepared by Mr. Justice Shenk. That opinion purports to distinguish, rather than to disapprove, the prior decisions in which liability has been denied, but I am of the opinion that no tenable distinction can be made. In other words, the majority opinion here cannot be reconciled with the prior decisions, and the labored but futile attempt of the majority opinion to bring them into harmony has the unfortunate result of leaving the law in hopeless confusion.

Before discussing the applicable authorities, a brief statement should be made concerning the record in this case. The material facts are not in dispute. With respect to the status of the child, there is no question but that the child was a trespasser. Defendants had done everything possible, by their words and by their acts, to deny the existence of any invitation, express or implied, to any child to enter the premises where the swimming pool was located, unaccompanied by the parents. In any event, this point is immaterial, as the child could not have had any status greater than that of a permittee or social visitor (*Ashley* v. *Jones*, 126 Cal.App.2d 328, 332 [271 P.2d 918]; 65 C.J.S., Negligence, § 35d, pp. 495-496), and the trial court properly instructed the jury that "it would make no difference whether the boy was a trespasser, or a permittee because, under the

108

facts of this case, the defendants would be under no greater duty to him if he was a permittee on the premises than if he was a trespasser." This instruction follows the rule enunciated by Mr. Justice Shenk in *Powers* v. *Raymond*, 197 Cal. 126, 131 [239 P. 1069], that even as to a "licensee," the landowner owes "no duty except to abstain from wilful or wanton injury." This rule has been reiterated in several later decisions of this court. (*Knight* v. *Kaiser Co., supra*, 48 Cal.2d 778, 781; *Palmquist* v. *Mercer*, 43 Cal.2d 92, 102 [272 P.2d 26]; *Oettinger* v. *Stewart*, 24 Cal.2d 133, 137-138 [148 P.2d 19, 156 A.L.R. 1221].)

With respect to the condition of the pool, the exhibits and all the testimony show that the water was clear and that the bottom of the pool, together with the small amount of leaves, silt and algae thereon, was plainly visible. Thus the condition shown involved nothing more than the common, obvious condition which is ordinarily incident to any body of water, natural or artificial.

The situation in this case is therefore controlled by the rules set forth in the numerous cases denying liability for injuries to trespassing children incurred by encountering the common, obvious hazards incident to such bodies of water. (*Melendez* v. *City of Los Angeles*, 8 Cal.2d 741 [68 P.2d 971]; *Peters* v. *Bowman*, 115 Cal. 345 [47 P. 113, 598, 56 Am. St. Rep. 106]; *Wilford* v. *Little*, 144 Cal.App.2d 477 [301 P.2d 282]; *Lake* v. *Ferrer*, 139 Cal.App.2d 114 [293 P.2d 104]; *Ward* v. *Oakley Co.*, 125 Cal.App.2d 840 [271 P.2d 536]; *Betts* v. *City & County of San Francisco*, 108 Cal.App.2d 701 [239 P.2d 456]; *Demmer* v. *City of Eureka*, 78 Cal.App.2d 708 [178 P.2d 472]; *King* v. *Simon Brick Co.*, 52 Cal.App.2d 586 [126 P.2d 627]; *Beeson* v. *City of Los Angeles*, 115 Cal.App. 122 [300 P. 993]; *Reardon* v. *Spring Valley Water Co.*, 68 Cal.App. 13 [228 P. 406]; *Polk* v. *Laurel Hill Cemetery Assn.*, 37 Cal.App. 624 [174 P. 414].) Those rules clearly dictate a reversal here, and it is worthy of note that this court has recently treated those rules as settled when it denied hearings in the latest cases involving swimming pools (*Wilford* v. *Little, supra*, and *Lake* v. *Ferrer, supra*), without a dissenting vote being recorded. The cited authorities are based upon the concept expressed by Dean Prosser in commenting upon section 339 of the Restatement of the Law of Torts, where he says: "There are some dangers common in the community which any child of sufficient age to be allowed at large may be expected to understand and appreciate—such as the usual risks of fire and

water, . . ." (Prosser on Torts, 2d ed., pp. 441-442); and these authorities are summarized in the California Annotation to the Restatement of Torts at pages 141-142 by the unequivocal statement that "There is no liability for drowning of children in ponds or reservoirs under the attractive nuisance doctrine."

The majority opinion concedes that "It is established in this state that a private swimming pool is not an attractive nuisance as a matter of law." That opinion nevertheless bases its affirmance upon its conclusion that the evidence was sufficient to justify the imposition of liability either (1) under the theory embodied in section 339 of the Restatement of the Law of Torts, or (2) under the so-called "trap" theory. I cannot agree. Where the evidence is uncontradicted, the question of the sufficiency of the evidence to bring the condition within any exception to the general rule limiting the liability of the landowner to trespassers has been treated by the above-mentioned authorities as a question of law for the court. Here the evidence was uncontradicted. There was no showing of any condition presenting anything but the common, obvious danger ordinarily incident to any body of water. It therefore follows as a matter of law under the cited authorities that liability was improperly imposed.

Considering first the so-called "trap" theory, it may be doubtful whether that theory is in truth an exception to the general rule governing the question of the liability of the landowner to trespassers. The purposeful creation or wanton maintenance of a concealed condition constituting a true "trap" might properly be regarded as a violation of the general duty of the landowner to refrain from any "wilful or wanton" injury to the trespasser, whether adult or child. But whether liability under the "trap" theory be deemed to come under the general rule or under an exception thereto, liability has never been imposed in this state under the "trap" theory, or any other theory, for any common, obvious condition incident to a body of water, natural or artificial. On the contrary, liability under the "trap" theory can only be based upon a "hidden danger" (65 C.J.S., Negligence, § 38, pp. 503-504) or a "concealed danger" (35 Cal.Jur.2d, Negligence, § 100, p. 609).

That the "trap" theory is wholly inapplicable here is made crystal clear by comparison of two prior cases of this court: *Sanchez* v. *East Contra Costa Irr. Co.,* 205 Cal. 515 [271 P. 1060], and *Melendez* v. *City of Los Angeles, supra,*

8 Cal.2d 741. In the Sanchez case, this theory was applied and liability was imposed. There the small boy "fell into the main canal which, at the time of the accident, was filled with about three feet of water, and then, evidently, slipped into the syphon at the bottom of this three feet of water. The water in the canal was muddy and the opening of the syphon could not be seen. The body of the child was recovered from a place some fifteen feet down in the syphon." (P. 516.) The court there said: "It is a matter of common knowledge that children playing on the edge of a shallow body of water will be tempted to play in the water and to reach into it, and while defendant need not have guarded against this open and obvious stream of water, under numerous California decisions, we think a different rule applies where an apparently harmless, shallow stream of water contains a large opening into which anyone might slip, which opening is wholly unguarded and completely concealed from view. . . . The children assumed the risk of the open, obvious, notorious danger incident to the canal, containing about three feet of water; but they did not assume the risk of an unknown, concealed, and unguarded danger." (Pp. 517-518.) Thus, it was held that the common, obvious risk of the open stream with its muddy water and slippery banks did not come within the "trap" theory, but the risk created by the uncommon and concealed syphon did come within that theory.

The Sanchez case was later distinguished by this court in *Melendez* v. *City of Los Angeles, supra,* 8 Cal.2d 741, where liability was denied. This court there affirmed a judgment entered following the sustaining of a demurrer without leave to amend on the ground that neither the "attractive nuisance" doctrine nor the "trap" doctrine was applicable. There it was alleged that the two young boys were drowned in an artificial pool where the "deep hole in this pool was completely concealed by the muddy condition of the water in the pool." (P. 743.) This court applied the rule of *Beeson* v. *City of Los Angeles, supra,* 115 Cal.App. 122, which it declared to be "on all fours," and held the decision there to be consistent with the Sanchez case on the ground that the "concealed hole was not an artificial contrivance or appliance maintained by the owner. . . ." (P. 746.) This court further said with respect to the Sanchez case, "In the latter case there was a concealed contrivance which no one would suspect." (P. 747.) This distinction is stressed in 1 Witkin, Summary of California Law, 1946 ed., pp. 748, et seq., where it is said that

it is only "where the natural or artificially created body of water contains an additional artificial contrivance constituting a concealed danger or trap," that "recovery may be allowed." (P. 750.) While the decision in the Melendez case has been criticized on the ground that the facts there may have been sufficient to show a "concealed" or "hidden" danger (26 Cal.L.Rev. 159; 11 So.Cal.L.Rev. 534), it has never heretofore been suggested that the Sanchez case or any other case in this state has sanctioned the imposition of liability under the "trap" theory unless the condition constituted a "concealed" or "hidden" danger. Nevertheless the "trap" theory is invoked in the majority opinion here upon the authority of the Sanchez case. The inapplicability of the Sanchez case to the common, obvious condition here is apparent from reading that opinion, and is emphasized by the opinion in the Melendez case.

Turning now to the consideration of section 339 of the Restatement of the Law of Torts, the majority opinion appears to give that section the force of a legislative enactment nullifying our prior decisions, and extending the exceptions to the general rule to conditions other than those falling within the so-called "attractive nuisance" exception or the "trap" exception, as defined by our decisions. Of course, the Restatement does not have the force of a legislative enactment and in any event, section 339, properly construed, has never heretofore been interpreted by this court as declaring a rule purporting to extend those exceptions. On the contrary, reference has been made to that section in our decisions in which liability has been denied (*Knight* v. *Kaiser Co., supra,* 48 Cal.2d 778; *Melendez* v. *City of Los Angeles, supra,* 8 Cal.2d 741), and the section has been treated as establishing tests consistent with such decisions. The decisions have further stressed the harshness of any exceptions to the general rule limiting the liability of the landowner to the trespasser and have cautioned against the extension of such exceptions. (*Knight* v. *Kaiser Co., supra,* 48 Cal.2d 778, 784; *Wilford* v. *Little, supra,* 144 Cal.App.2d 477, 480; *Lake* v. *Ferrcr, supra,* 139 Cal.App.2d 114, 118.) Heedless of that caution, the majority opinion now has apparently given section 339 its broadest possible interpretation and thereby sanctions the extension of the heretofore well-defined exceptions into ill defined fields. Any such exemption to cover the situation here is obviously inconsistent with our

prior decisions as well as with the language employed in the opinions.

The background of section 339, which throws some light upon its proper interpretation, is considered at length in Prosser on Torts, 2d ed., pp. 432, et seq. The author recognizes that "in general, the possessor of land is not liable for harm to trespassers caused by his failure to put the land in a reasonably safe condition for their reception, . . ." (Prosser on Torts, 2d ed., p. 432.) He then notes the qualification or exception adopted in most jurisdictions and known as the "attractive nuisance" doctrine or "turntable" doctrine, which makes the occupier of land liable for conditions which are "*highly* dangerous to trespassing children." (*Ibid.*, p. 438; emphasis added.) He further notes that said doctrine is not recognized at all in several jurisdictions, where it is denounced "as a piece of sentimental humanitarianism that imposes an undue burden upon landowners and industry, is founded on sympathy rather than law or logic, and gives the jury a free hand to express its feelings for the child out of the defendant's pocket." (*Ibid.*, p. 439.) He states that "the courts which accept the principle are notably cautious in applying it, and have voiced occasional expressions of doubt about it. The tendency has been to seek some middle ground which will allow recovery in a limited group of cases, without protecting all children against everything." (*Ibid.*, p. 439.) Dean Prosser approves section 339 as offering such middle ground. In construing the section, he states that "some possibility of danger, not unreasonably great, is not enough; . . ." and that "There are some dangers common in the community which any child of sufficient age to be allowed at large may be expected to understand and appreciate—such as the usual risks of fire and water, . . ." (*Ibid.*, pp. 441-442.) Thus, Dean Prosser's interpretation of section 339 appears to be in line with the above-mentioned authorities denying liability for injuries sustained by trespassing children in encountering the common, obvious dangers of bodies of water, natural and artificial.

From this historical background, it seems evident that section 339 was intended merely to follow the rules generally adopted by the courts of those jurisdictions, including California, which had theretofore recognized the so-called "attractive nuisance" exception; and to formalize and rationalize that exception. It does not appear that it was intended to equate the duty of the landowner toward the trespassing child

with the duty imposed by section 1714 of our Civil Code, for if it had been so intended, the draftsman of section 339 of the Restatement of the Law of Torts could have expressed that intention in relatively few words. While text writers, other than Dean Prosser, have generally approved section 339 and have been critical of the courts which have refused to recognize any exception to the general rule, they do not appear to be entirely in agreement as to the section's proper interpretation.

This court adopted the "attractive nuisance" exception at an early date, but it has not heretofore attempted to interpret section 339 of the Restatement of the Law of Torts or to discuss definitively its relation to our decisions. As above indicated, it has apparently deemed said section to be in accord. The opportunity is now presented for this court clearly to define its position, and I think that it should grasp that opportunity. This the majority opinion has failed to do. It states that "the conditions necessary to establish liability on the theory of section 339 have been met"; it makes a futile attempt to distinguish the prior decisions; it declares that "recovery is granted or denied depending on the facts of each case"; and it makes the bald statement that "Recovery in the present case is consistent with the established law of this state." In my opinion, the majority opinion will serve only to confuse rather than to clarify the settled law in this important field.

Any proper interpretation of section 339 of the Restatement of the Law of Torts must be made in the light of both its background and its wording. It should be noted that its heading confines its application to "Artificial Conditions *Highly* Dangerous to Trespassing Children" (emphasis added), and that subdivision (b) of the section confines its application to a condition involving "an *unreasonable risk* of death or serious bodily harm to such children." (Emphasis added.) It therefore does not purport to cover every condition which presents some danger or risk of harm, but only conditions which are "highly dangerous" and which present "unreasonable risk" of harm. If confined as its wording indicates, the section is entirely in line with the prior decisions of this court. If extended as the majority opinion indicates, the section is entirely out of harmony with those decisions. It further appears that any use of the unqualified words "danger" or "risk" in any discussion of the section simply ignores its fundamental requirements.

There are those who would equate the requirements of section 339 with mere foreseeability of harm to trespassing children or with the provisions of section 1714 of the Civil Code. The wording of section 339 negatives the soundness of such an interpretation. Furthermore, such interpretation would not be based upon reason. There is possible foreseeability of harm to children under practically all conditions which exist either on their home premises or on the property of others. It is a matter of common knowledge that children are venturesome; that they wander at will; and that they may get into difficulty anywhere. Thus there is foreseeability of harm wherever they may play. It may be in the natural or artificial conditions found in our public parks and playgrounds, or it may be in the natural or artificial conditions found on private property. Private property exists from the shores of our ocean to the peaks of our mountains. Both public and private property embrace such natural conditions as precipitous cliffs and the irregular shore lines of bodies of water, such as bays, streams, lakes, and ponds. They likewise embrace such common, artificial conditions as lakes, swimming pools, fish ponds, walls, fences, buildings under construction, and piles of building materials used for construction purposes. These ordinary conditions, presenting only common and obvious danger or risk of harm to the trespassing child, are not of the type which has heretofore been held to fall within any of the above-mentioned exceptions. On the contrary, even with respect to public property, recovery has been denied for injuries incurred by slipping or falling into pools of water, natural or artificial. (*Melendez* v. *City of Los Angeles, supra,* 8 Cal.2d 741; *Betts* v. *City & County of San Francisco, supra,* 108 Cal.App.2d 701; *Beeson* v. *City of Los Angeles, supra,* 115 Cal.App. 122.)

The above-cited authorities, and practically all the decisions in this state, have laid down rules which follow a consistent pattern as follows: (1) that as a general rule, the landowner owes no duty to the trespasser or licensee with respect to the condition of the premises except "to abstain from wilful or wanton injury"; (2) that there is a limited exception to this general rule with respect to children, which exception is embraced within the so-called "attractive nuisance" doctrine, or its counterpart as embodied in section 339 of the Restatement of the Law of Torts; (3) that such exception produces harsh results and should therefore be strictly limited rather than extended; (4) that it should never be applied to common,

obvious dangers but only to situations involving at least some uncommon or concealed danger; (5) that the danger of the conditions ordinarily incident to the maintenance of a body of water, natural or artificial, is a common, obvious danger rather than an uncommon or concealed danger; and (6) that in a case involving such a common, obvious danger it should be held as a matter of law that such type of danger does not fall within any exception to the general rule so as to permit the imposition of liability upon the landowner. It appears to me that the decision in the present case is destructive of this consistent pattern.

The necessity for clarification by this court of the meaning of section 339 is apparent from a reading of *Copfer* v. *Golden,* 135 Cal.App.2d 623 [288 P.2d 90], upon which the District Court of Appeal relied in its opinion in the present case. (*Reynolds* v. *Willson* (Cal.App.), 308 P.2d 464.) The Copfer case did not involve a body of water, but its reasoning shows that section 339 was there construed in a manner which would equate its requirements merely with section 1714 of the Civil Code. There the injury to the trespassing child occurred when it fell from a trailer parked on the premises of the owner. There is nothing in that opinion to indicate that the trailer was anything other than a lawful type of trailer presenting only the common, obvious risks which might be presented by any type of trailer upon which a child might see fit to climb. For aught that appears, it was the type of vehicle which could have been lawfully parked upon the streets without incurring liability to children who might have climbed upon and fallen from it. Nevertheless, the court there sustained a judgment imposing liability where the injury occurred when the trespassing child climbed upon and fell from the trailer while parked on the owner's property. In my opinion, the court there placed an erroneous interpretation upon section 339 and further, reached the wrong result on the facts even under its own erroneous interpretation of the section. There was no petition for hearing by this court. I believe that this court should disapprove *Copfer* v. *Golden,* *supra,* and should clearly enunciate this court's interpretation of section 339 for the guidance of the bench and bar. That case and its interpretation of section 339 was made the cornerstone of the opinion of the District Court of Appeal in the present case, when it declared that "The rule in California is stated in *Copfer* v. *Golden,* 135 Cal.App.2d 623 [288 P.2d 90]." (*Reynolds* v. *Willson, supra,* (Cal.App.) 308

P.2d 464.) It is the only case cited in the briefs or by the District Court of Appeal which has any tendency to support the conclusion reached by the majority, and yet the majority opinion fails expressly to approve or disapprove, or even to mention it.

Of the cases which are cited in the majority opinion, all are in accord with the views expressed in this dissent, and none lend support to the majority. In *Faylor* v. *Great Eastern Q. Min. Co.*, 45 Cal.App. 194 [187 P. 101], it was declared that the particular danger of an unguarded "stope" in the darkness of the mining tunnel "was distinctly a concealed danger" (p. 203), and the court clearly distinguished the cases involving the common, obvious danger of bodies of water, natural or artificial (p. 202).

The cases of *Blaylock* v. *Jensen*, 44 Cal.App.2d 850 [113 P.2d 256], and *Long* v. *Standard Oil Co.*, 92 Cal.App.2d 455 [207 P.2d 837], cited in the majority opinion, both involved highly unusual conditions which defendants permitted to exist in close proximity to the highway. The Blaylock case compared the situation to the one mentioned in *Loftus* v. *Dehail*, 133 Cal. 214 [65 P. 379], in the following manner: ". . . a cesspool, open and unguarded, yet with its surface covered with a layer of deceptive earth to a level with the adjacent land. Into such a trap anyone, adult or child, might have walked." (P. 852.) In the Long case, the court pointed to facts taking the case out of the common, obvious danger class and bringing it within the uncommon, concealed danger class. (P. 459.) While both cases appear to have been correctly decided on their facts, the discussion of section 339 again shows the need for clarification of its meaning by this court.

Neither *Crane* v. *Smith*, 23 Cal.2d 288 [144 P.2d 356], nor *Zarzana* v. *Neve Drug Co.*, 180 Cal. 32 [179 P. 203, 15 A.L.R. 401], cited by the majority, is in point, as neither involved a child who was a trespasser or mere licensee. And *Staggs* v. *Atchison, Topeka & S. F. Ry. Co.*, 135 Cal.App.2d 492 [287 P.2d 817], throws no light whatever on the problem, as it involved the imposition of liability upon the defendant for active negligence in the operation of its train rather than for a claimed violation of any duty owed to trespassers with respect to the condition of defendant's property. (See also *Yamauchi* v. *O'Neill*, 38 Cal.App.2d 703 [102 P.2d 365].)

While this court unquestionably has the power to disapprove prior decisions where it finds compelling reasons for so

doing, it likewise has the duty to exercise that power sparingly to the end that the law may possess to a high degree the desirable attributes of certainty and stability. Furthermore, if compelling reasons do appear to this court for disapproving settled rules of law, then this court has the further duty of expressly stating such disapproval and of clearly declaring the new rules which are to replace the old. Those duties cannot be met by declaring in vague terms ''that recovery is granted or denied depending on the facts of each case'' or by the employment of reasoning which is couched in obscure words and phrases. The bench and bar will be compelled to speculate on the answer to the question: Has this court now departed from the settled law of this state, and if not, what is the effect of the majority opinion? Despite the declaration of the majority that the imposition of liability here is ''consistent with the established law of this state,'' it fails to sustain that thesis, and it leaves the answer to the above question shrouded in doubt.

In the light of the authorities cited in the majority opinion and those cited in this dissent, it seems entirely clear that the question presented in this case is not an open one. But if it were an open question, there appears to be sound reason for strictly limiting the cases in which the landowner should be held liable for injuries to the trespassing child. Practically all natural and artificial conditions found on private property, including trees, irregular terrain, fences, walls, fish ponds, swimming pools, buildings, building materials, and the like present some danger and risk of harm to the child who would climb upon or play about them. The question therefore is whether there should be imposed upon the landowner the duty to safeguard the trespassing child from the common, obvious risks of harm which such natural and artificial conditions present. Reason dictates that no such duty should be imposed, and that the landowner should be held liable only in those situations presenting at least an uncommon or concealed danger.

The added duty which the majority opinion now apparently imposes does not constitute a ''balancing'' of the conflicting considerations between the landowner and the trespassing child. The imposition of that added duty has the effect of placing the entire burden upon the landowner. Any attempt by landowners generally to meet that increased burden would require them to build ''child-proof'' fences and gates around all such natural and artificial conditions. The taking

of such precautions would greatly lessen the attractiveness of our urban and suburban developments. While Dean Prosser states that the landowner should not be required "to make his premises 'child-proof' " (Prosser on Torts, 2d ed., p. 444), there appears to be no other way of meeting the added burden which the majority opinion now imposes.

In conclusion, it must be remembered that just as happened here, a tragic accident will occasionally occur. But accidents to children resulting from common, obvious conditions are no more unusual when they are trespassing on the land of others without right than they are when playing on their own premises or on public property where they have a right to be. Danger and reasonable risks of harm are present everywhere. Clearly the play apparatus customarily found in public school yards and in public playgrounds, as well as the conditions found around lakes and ponds in public parks, are all "attractive" to children and present dangers and risks of harm at least equal to those presented by any condition which existed on the premises of the defendant landowners. Nevertheless, all such common, obvious dangers have been consistently held to be insufficient to impose liability. I would adhere to the settled rules and reverse the order.

Schauer, J., and McComb, J., concurred.